**THOMASON et al. v. HAWLEY et ux.**
**(No. 1319.)**

(Court of Civil Appeals of Texas. El Paso. May 4, 1922. Rehearing Denied June 22, 1922.)

1. **Appeal and error** ⬅️882(15)—**Failure to define term used in special interrogatories not error in absence of request.**

In an action to cancel a written instrument, the allowing of the special interrogatory whether defendant induced plaintiffs by fraudulent representations to deliver the instrument was not error for failing to instruct on the essential elements of "fraudulent representations," in view of the fact that the court gave the special charges requested by defendant on the necessary elements of fraudulent representations.

2. **Appeal and error** ⬅️1064(1)—**Submission of interrogatory referring to pleadings for issue not prejudicial error.**

Where the jury was not misled, the submission of a special interrogatory which refers the jury to the pleadings for the issue submitted is not reversible error.

3. **Trial** ⬅️253(5)—**Instruction as to defense of bona fide purchaser held erroneous as ignoring essential elements of rule.**

In an action for cancellation of a deed, where the defense of a bona fide purchaser was set up, defendant's requests were erroneous as ignoring the question of constructive notice of plaintiffs' equitable right or such facts as would put a prudent man on inquiry.

4. **Appeal and error** ⬅️215(1)—**No review of court's charge where no objection was made.**

Where no objection was made to the trial court's charge, no error is presented.

5. **Vendor and purchaser** ⬅️242—**Burden of proving lack of notice on alleged bona fide purchaser.**

Generally the junior vendee has the burden of showing that he purchased for value and without actual or constructive notice.

6. **Judgment** ⬅️707—**Judgment in another suit to which plaintiffs were not parties not res adjudicata.**

A judgment in another suit to which plaintiffs were not parties is not res adjudicata of the present suit.

**7. Cancellation of instruments** ☞24(1)—
Where consideration worthless, restoration
held unnecessary.

To cancel an instrument executed in con-
sideration of the issuing of stock, no offer to
return the stock is necessary where it is ut-
terly and wholly worthless.

Appeal from District Court, Stephens Coun-
ty; W. R. Ely, Judge.

Action by J. T. Hawley and wife against
G. J. Thomason and others. Judgment for
plaintiffs, and defendants appeal. Affirmed.

H. G. McConnell, of Haskell, E. D. Mc-
Kenzie, of Anson, and Wm. E. Hawkins, of
Breckenridge, for appellants.

W. C. Veale, of Breckenridge, and J. R.
Stubblefield, of Eastland, for appellees.

### Statement of Case.

HIGGINS, J.   On May 2, 1910, the ap-
pellees, J. T. Hawley and his wife, executed
the following instrument:

"The State of Texas, County of Stephens.

"Know all men by these presents that J. T.
Hawley and M. A. Hawley, husband and wife,
of Stephens county, Tex., the party of the first
part, in consideration of the sum of $1.00 paid
by ~~A. L. Thomason and~~ G. J. Thomason, ~~for
the Diamond Coal, Oil and Gas Company,~~ par-
ties of the second part, the receipt of which is
hereby acknowledged, and the further consid-
eration hereinafter mentioned, have granted,
bargained, sold, and conveyed, and by these
presents do grant, bargain, sell, and convey,
unto the parties of the second part, their heirs
and assigns, all of the coal, oil, and gas and
other minerals in and under the following de-
scribed land, together with the right of in-
gress and egress at all times for the purpose
of drilling, mining, and operating for minerals
and to conduct all operations and to lay all
pipes and railway necessary for the production,
mining, and the transportation of the coal, oil,
gas, water, or other minerals, and shall have
the right to remove all machinery, fixtures, and
improvements placed thereon at any time, re-
serving, however, to the parties of the first
part their proportionate part of the cash divi-
dends which shall be determined by the number
of shares of stock owned by them and such
payment made quarterly without demand, said
land being described as follows, to wit: [Here
follows description of land.]

"To have and to hold the above-described
premises unto the said parties of the second
part, their heirs and assigns, upon the following
condition: In case operation for either the
drilling of a well for coal, oil, gas, mining, or
other minerals is not commenced and prose-
cuted with due diligence within 15 months from
this date on the above-described premises or
one or more of their leases owned by the par-
ties of the second part, ~~Diamond Coal, Oil and
Gas Company,~~ then the second party agrees
to pay the first party the sum of 10 per cent.
per annúm on the par value of each dollar of
stock owned by first party; it being agreed
that the first party is to take shares of the

capital stock of the Diamond Coal, Oil & Gas
Company ~~above-named corporation~~ at par value
as payment of the above-named 10 per cent.
until such well or shaft is commenced, and it
is agreed that the completion of such well or
opening up one mine, gas, or oil well shall be
and operate as a full liquidation of all rental
under this provision during the remainder of
the term of this lease.   Such payment shall
be made direct to the holder of said stock.

"In case the parties of the second part shall
bore and discover either coal, oil, gas, or other
minerals, then in that event this grant, incum-
brance, or conveyance shall be in full force and
effect for 20 years from the time of the dis-
covery of said product, and as much longer as
coal, oil, gas, water, or other minerals can be
produced in paying quantities thereon.

"Whenever sales are being made of the prod-
uct on the land above described, such sales
shall be added to the sales of the products
from all leases owned by the parties of the
second part. ~~Diamond Coal, Oil and Gas Com-
pany,~~ a settlement shall be made at the end
of each quarter.

"It is further agreed that the second parties,
their heirs and assigns, may at any time here-
after surrender up this grant, and may be re-
lieved from any part of the contract hereto-
fore entered into that may at any time remain
unfulfilled, and then and from thereafter this
grant shall be null and void and no longer bind-
ing on either party.

"It is understood between the parties to this
agreement that all conditions between the par-
ties hereunto shall extend to their heirs, ex-
ecutors, administrators, and assigns."

On May 15, 1917, Hawley and wife brought
this suit against G. J. Thomason to set aside
and cancel the above-described instrument.
The third amended petition, upon which the
case was tried, contained a count in trespass
to try title.   In another count the lease was
sought to be avoided upon various grounds
which may be summarized as follows: Fraud
practiced in procuring the lease in that
Thomason induced the plaintiffs to execute
the same by false and fraudulent representa-
tions, promissory in their nature, which
promises Thomason at the time had no in-
tention to perform, and made same for the
purpose of deceiving and defrauding plain-
tiffs, and which he had wholly failed and
refused to perform.   In connection with the
issue of fraud facts were alleged showing an
excuse for not discovering the fraud until a
time within which the statute of limitation
had not run so as to bar the right of rescis-
sion because of such fraud.

It was further alleged that the recited
consideration of $1 cash had not been paid;
that the contract was unilateral and without
consideration; that drilling operations had
not been prosecuted with any diligence, and
defendant had never performed any of the
conditions of the contract; that the contract
covered lands which in part were homestead;
that the contract was not executed, but ex-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ecutory, and therefore void as to the homestead; that the defendant had abandoned the contract and his rights thereunder.

On November 28, 1919, G. W. and Y. L. Thomason, brothers of G. J. Thomason, intervened in the suit and claimed an undivided two-third interest in the mineral resources of plaintiffs' land covered by the aforesaid contract by virtue of a conveyance thereof to them by G. J. Thomason dated January 16, 1911; that they acquired the same for value without notice; and that they were innocent purchasers thereof.

The case was tried before a jury and submitted upon special issues. The issues and the jury's answers thereto are as follows:

"No. 1. Did the defendant G. J. Thomason by means of fraudulent representations induce the plaintiffs to execute and deliver the written mineral contract which was offered in evidence in this case, as alleged by the plaintiff? Answer 'Yes' or 'No.' Answer: Yes.

"No. 2. If you have answered the foregoing question in the affirmative, and only in that event, then answer the following question: Did the plaintiffs file this suit within two years after discovering such fraud, if any was committed, or within two years after they could have discovered said fraud, if any was committed, by the exercise of reasonable diligence. Answer: Yes.

"No. 3. Did the defendant G. J. Thomason pay a valuable consideration, either directly or indirectly, for the mineral contract in controversy? Answer 'Yes' or 'No.' Answer: No.

"No. 4. Did the defendant G. J. Thomason or interveners G. W. Thomason and Y. L. Thomason, or either of them, commence operation for either the drilling of a well for coal, oil, gas, or other minerals within 15 months from the 2d day of May, 1910, and prosecute the same with due diligence on the plaintiffs' land, or on any land on which the said G. J. Thomason had a mineral contract? Answer 'Yes' or 'No.' Answer: No.

"No. 5. Did the defendant G. J. Thomason or the interveners pay to the plaintiffs 10 per cent. of the par value of the stock held by the plaintiffs in the Diamond Coal, Oil & Gas Company, either in money or in the stock of said Company? Answer 'Yes' or 'No.' Answer: No.

"No. 6. Did the defendant or the interveners complete a well or open up a mine, gas or oil well, either on the plaintiffs' land or on any land on which the defendant or the interveners held a mineral contract? Answer 'Yes' or 'No.' Answer: No.

"No. 7. Was any part of the land described in the plaintiffs' petition the homestead of the plaintiffs on the 2d day of May, A. D. 1910? Answer 'Yes' or 'No.' Answer: Yes.

"No. 8. Did the defendant and the interveners abandon the mineral contract in controversy? Answer 'Yes' or 'No.' Answer: Yes.

"No. 9. Did the defendant G. J. Thomason and the interveners abandon the rights, if any they had, to the land in controversy? Answer 'Yes' or 'No.' Answer: Yes.

"No. 10. Did the intervener G. W. Thomason in January, 1911, purchase from G. J. Thomason one-third of the minerals described in said mineral contract which is in controversy, without notice of the claims of the plaintiffs in this case, and did he pay the said G. J. Thomason a valuable consideration for the same at the time? Answer 'Yes' or 'No.' Answer: No.

"No. 11. Did Y. L. Thomason in January, 1911, purchase from G. J. Thomason one-third of the minerals described in the mineral contract in controversy without notice of the claims of the plaintiffs in this case, and did he pay the said G. J. Thomason a valuable consideration for the same at the time? Answer 'Yes' or 'No.' Answer: No.

"Special issue No. 1 requested by defendant: Could coal have been mined and marketed from any of the lands upon which leases were owned by the defendant or interveners at a profit from the fall of 1910 down to May 15, 1917? Answer 'Yes' or 'No.' Answer: Yes.

"No. 2 requested by defendant: Did defendant and interveners, on account of not having transportation and other facilities for operating for coal, await or defer further developments and operations for coal until such time as they could develop and produce the coal at a profit? Answer 'Yes' or 'No.' Answer: No."

Defendant requested and the court gave two special charges which read:

"Gentlemen of the jury, you are charged that no oral statement, representation, or promise, if any, not included in and shown by the written conveyance of May 2, 1910, to defendant, is to be considered by you further for any purpose, and unless you find and believe from the evidence that such oral statement, representation, or promise was false at that time and was made by the defendant with the fraudulent purpose and design of defendant to impose upon and defraud plaintiffs, and that but for such false and fraudulent statement, representation or promise, if any, plaintiffs would not have executed said conveyance of May 2, 1910."

"Gentlemen of the jury, you are charged that, when an agreement in writing is executed by the parties to it, and is delivered, all prior negotiations and talk between them in the premises become either abandoned or waived or merged into such written instrument, and thereafter the terms or legal effect of such instrument cannot be changed or altered by oral testimony. Accordingly the written conveyance of March 2, 1910, from plaintiffs to defendant speaks the entire contract between the parties, and nothing can be added thereto or subtracted therefrom by oral testimony of any person. And unless you find and believe from a fair preponderance of the evidence in this case that such written conveyance was obtained of plaintiffs through fraud of defendant himself or fraud legally and fairly attributable and chargeable to defendant, you will consider and hear said conveyance or written instrument of May 2, 1910, as constituting the entire contract between plaintiffs and defendant."

Upon the answers returned by the jury judgment was rendered in favor of Hawley and wife. The defendant and interveners appeal.

### Opinion.

[1, 2] Error is assigned to the form of the submission of issue No. 1 upon two grounds,

substantially as follows: (1) In failing to properly instruct the jury as to the essential elements of "fraud" and "fraudulent representations" as presented by the pleadings and the evidence. (2) In referring the jury to the pleadings for the issues of fraud instead of a specific submission of such issues raised by the pleadings and evidence.

As to the first objection, this was a matter of omission to supply which a proper instruction should have been requested. The court gave the two charges above quoted at the request of defendant which related to this matter, and it cannot be complained that such charges are not correct or sufficiently full.

As to the second objection the courts have often condemned the practice of referring the jury to the pleadings for the issues submitted. But it is uniformly held that such a submission is not reversible unless it is apparent that the jury has been thereby misled. The evidence of fraud upon the part of G. J. Thomason in procuring the contract from Hawley and wife is plain and wellnigh conclusive. We are of the opinion that under the facts reflected by this record and in view of the special charges above quoted the jury could not have been misled by the form in which the issue of fraud was submitted, and that the matter presents no reversible error.

As to the assignment complaining of the refusal of a peremptory instruction this is without merit. The evidence abundantly raises the issue of fraud practiced in procuring the contract. It also raises an issue as to the diligence of plaintiffs in discovering the fraud so as to relieve them of being barred by limitation. And upon the whole record we hold that the issue of abandonment is also raised by the evidence. Whether or not the interveners were innocent purchasers for value is also raised by the evidence. These considerations alone required the refusal of the requested peremptory instruction.

[3] The court instructed the jury that the burden of proving the affirmative of issues 10 and 11 rested upon interveners.

Interveners also requested two special charges as follows:

"No. 2. The burden of proof as between the plaintiffs and the interveners is upon the plaintiffs to prove by a preponderance of the testimony that at the time interveners purchased from the defendant, if they did so purchase, an interest in the minerals in and under the lands described in plaintiffs' petition, they had notice or knowledge of the alleged fraud, if any you find there was, practiced upon the plaintiffs. And in this connection you are charged that the interveners had the right to rely upon the recitations in the conveyance from plaintiffs to defendant of May 2, 1910, and to assume that they were true.

"No. 3. Under the pleadings and the undisputed facts in this case, the law will presume that the interveners (if they bought from defendant a two-thirds interest in the minerals conveyed to defendant by plaintiffs by the written instrument of May 2, 1910) bought such minerals in good faith and without knowledge or notice of the claims of fraud now here made in this case by plaintiffs. The burden of showing otherwise is on plaintiffs in order to defeat the claims of interveners as innocent purchasers for value."

Error is assigned to the charge given upon the burden of proof and to the refusal of the requested charges.

The point made is that interveners by the conveyance from G. J. Thomason acquired the legal title to two-thirds of the mineral interest, and therefore the burden rested upon the plaintiffs to show that interveners acquired this title with notice of the equitable right of the plaintiffs to rescind on account of the fraud practiced upon them.

The rule involved has been thus stated:

"Where the subsequent purchaser gets the legal title, and another party, holding an equitable title, seeks to oust him, the burden of proof rests on the holder of such equity to show that the subsequent purchaser had notice, actual or constructive, of his equitable title, or such facts as would put a prudent man on inquiry." Peterson v. McCauley (Tex. Civ. App.) 25 S. W. 829, and cases cited.

[4] In so far as the main charge is concerned, the matter presents no error, because no objection thereto was made in the court below.

[5] The general rule as to the burden of proof is that it rests upon the junior vendee to show that he purchased for value and without notice, but this rule is subject to the exception indicated in Peterson v. McCauley. The requested charges did not correctly state the exception, because they ignored the question of constructive notice of the equitable right of plaintiffs or such facts as would put a prudent man upon inquiry. As drawn, they, in effect, required plaintiffs to show actual notice, and imposed a greater burden than the law required.

The requested charges are also otherwise objectionable.

[6] There is no merit in the contention that the judgment rendered in Ham v. Thomason is res adjudicata of the present suit, because these plaintiffs were not parties to that suit.

[7] It was not necessary for the plaintiffs to offer to return the stock received by them in the Diamond Coal, Oil & Gas Company. Thomason's own testimony shows that this $700,000 corporation, organized under the laws of Arizona, has not now, and never has had, any assets whatever. It has never owned a dollar in money or property. Its stock is utterly and wholly worthless. The return thereof was not necessary to the right of rescission. Thomason v. McEntire (Tex. Civ. App.) 233 S. W. 617.

The view that the evidence supports the findings upon the issues of fraud, diligence in discovering same, abandonment, and the status of interveners as not being innocent purchasers for value renders unimportant many questions presented so ably by appellants' distinguished counsel relating to the nature of the contract and the rights acquired thereunder by G. J. Thomason. Such questions are important only if rescission of the contract be denied the plaintiffs.

All assignments and questions presented and not specifically referred to have been considered and are overruled as without intrinsic merit, or, in any event, as not being of a reversible nature.

Affirmed.