**LANCASTER et al. v. KELLER.** (No. 2622.)

(Court of Civil Appeals of Texas. Texarkana.
Nov. 16, 1922. Rehearing Denied
Nov. 23, 1922.)

1. **Master and servant ⬤➾276(6) — Circumstances held to warrant finding switchman's death was caused by excavation under switchrod.**

Circumstances in evidence *held* to warrant a finding that negligence in permitting an excavation under the bridle rod of a switch was the proximate cause of injury to deceased switchman by stepping into the excavation and becoming so fastened by the rod as to hold him until he was run over.

2. **Master and servant ⬤➾276(10)—Finding of injury in employment as switchman warranted.**

Evidence as to the location of a switch shanty and a toilet used by yard employés and switchmen *held* to warrant the inference that deceased switchman was run over while going to or returning from the shanty so as to bring him within the rule that a temporary stoppage of work by an employé for purposes which are the inevitable and necessary incidents of life must be in the contemplation of the parties in every employment.

3. **Master and servant ⬤➾295(7)—Instruction on switchman's assumption of risk held proper.**

Where defendant used two switchyards, and the undisputed testimony showed that deceased switchman's duties included service in both, though he belonged to a crew in one of them, to which he was going when injured in the other, an instruction on assumed risk, predicated on Vernon's Sayles' Ann. Civ. St. 1914, art. 6645, which authorized recovery if the jury found that he knew the condition of the yard, and that one of ordinary care would have continued in the service with knowledge of the condition, was proper and not erroneous on the theory that the statute applied only to defects which must be encountered in the service.

4. **Appeal and error ⬤➾230—Instructions unobjected to not reviewed on appeal.**

In view of Vernons' Sayles' Ann. Civ. St. 1914, art. 1971, where instructions were not objected to before they were given to the jury, they will not be considered on appeal.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by Mrs. Elizabeth Keller, administratrix, against J. L. Lancaster and another, receivers. Judgment for plaintiff, and defendants appeal. Affirmed.

F. H. Prendergast and George Prendergast, both of Marshall, for appellants.

Davidson, Blalock & Blalock, of Marshall, for appellee.

WILLSON, C. J. At about 12 o'clock of the night of October 13, 1921, R. S. Keller, a switchman in the Texas & Pacific Railway Company's yards in Fort Worth, was run over and fatally injured by a car in said yards. This suit for damages for his death was brought by appellee as the administratrix of his estate, for her own benefit and the benefit of deceased's four surviving children. The judgment was in her favor for $8,000, which was apportioned as follows: $6,500 to appellee in her own right, $1,000 to Carrie Mae Keller, one of the children, and $500 to Marion Keller, another one of the children. The other two children were not awarded anything.

It appeared from the testimony that appellants maintained two switching yards in Fort Worth—one designated as the "west," and the other as the "east," yard. Keller had worked in the yards several years. At the time of the accident he was in the west yard. He had gone there from the east yard, where most of his services were performed, with an engine and switching crew to transfer cars to the east yard. The engine and crew stopped on track 4, and were waiting for the cars they were to carry to the east yard to be switched by another engine then being operated by a west yard crew. South of track 4, and running parallel with it, were tracks 5, 6, and 7. Deceased was run over at a point where a switch connected track 6 with track 7, by a car moving on the latter track. At that point the excavation in which the bridle rod (about three inches wide and seven-eighths of an inch thick) of the switch was placed was four or five inches wide on each side of the rod, and four or five inches deep. The theory on which appellee sought and recovered the judgment was that appellants were guilty of negligence in permitting the excavation to be where it was, and that the death of the deceased was due to the fact that in going across or along the track he stopped therein, when his foot became so fastened by the rod as to hold him on the track until the car ran over him.

Several reasons why the judgment should be reversed are urged in appellants' brief.

First, it is insisted that the testimony did not warrant a finding that appellants were guilty of negligence in permitting the excavation to be in the yards; in considering the testimony we have reached a conclusion to the contrary, and overrule the contention.

[1] Next, it is insisted that, if the testimony did warrant such a finding, it did not warrant the further finding that such negligence was a proximate cause of the injury to the deceased. We have had doubt whether this contention should be sustained or not, but have concluded it should not be. The deceased lived only two or three hours after he suffered the injury, and, so far as the record shows to the contrary, made no statement about the accident. No witness testified as to how it occurred. The circumstances testified to tending to show how it oc-

curred were: (1) The existence of the excavation; (2) the fact that witnesses who reached deceased an instant after he was struck by the car found him lying face down between the rails of the track, with one of his feet at the bridle rod; (3) the fact that there were tracks showing that some person had stepped into the excavation; (4) the fact that there were "marks" on the bridle rod; and (5) the fact that the car which struck him was moving east at that time. While the circumstances stated are not inconsistent with the view that the deceased did not step into the excavation, we think the jury had a right to conclude that they tended to show the contrary, and that the death of deceased was caused by the wrong of the appellants in permitting the excavation to be in the yards.

[2] It is further insisted that, even if appellants were guilty of negligence as charged against them, and such negligence was a proximate cause of the injury to the deceased, they nevertheless were not liable as determined by the judgment, because, they say, it appeared that deceased was a mere licensee while on track 7, and that they owed him no duty to make that track safe for him to be on. The contention is based on testimony showing that, while the engine and crew with which deceased worked were on track 4, waiting for cars they were to carry to the east yard to be switched, deceased for some reason not directly shown by the testimony, left said engine and crew, and went to track 7 where the accident occurred. The principle invoked in support of the contention is stated as follows in 5 R. C. L. 582:

"If an employé voluntarily and unnecessarily leave his employment and assume a position of peril merely for his own pleasure or convenience, he ceases to be an employé for the time being, and becomes either a trespasser or at best a mere licensee. This is true where an employé leaves his place of work and goes to another part of the employer's premises which is not intended for his use."

This case in its facts is not within the rule stated. It did not appear that deceased "voluntarily and unnecessarily" left his employment. As stated above, there was no direct evidence showing how he came to be on track 7, but there was testimony from which an inference as to why he was there was fairly deducible. South of and near the place where the deceased was struck by the car was a house designated by witnesses as the "switch shanty." Referring to that house, a witness (a switchman) testified that—

"Half of it is for the clerks and yardmaster and an operator and the other half for the switchman to keep their clothes, lanterns, and rain clothes. Drinking water is on the porch and oil for our lanters. There is a toilet 75 or 100 feet southeast of the shanty."

A permissible inference from this testimony is, we think, that the deceased was going to or returning from the shanty or toilet, which brings the case within a qualification of the rule appellants invoke, stated as follows on page 583 of the authority they cite:

"A temporary stoppage of work by an employé for purposes which are the inevitable and necessary incidents of daily life must of necessity be in the contemplation of the parties in every employment, and hence to create no suspension of the relation of employer and employé. Accordingly the duties and liabilities incident to the relation are generally held to continue while employés are temporarily resting, procuring drinking water, or using the privy provided for their convenience."

[3] In their answer appellants alleged that—

The deceased "had been for a long time working in the yards at Fort Worth, and knew of the actual condition of the track, switches, bridle rods and surface of the earth, and assumed the risk of being injured from those causes."

With reference to the issue thus presented the trial court instructed the jury to find in appellee's favor if they believed that deceased—

"knew the condition of the yard as to trenches being under the bridle rod, or by proper attention to his duties as switchman he would have known of that condition, and if you further believe a person of ordinary care would have continued in the service of the defendant with the knowledge of such condition of the yard."

The instruction was predicated on the statute (article 6645, Vernon's Statutes), which declares that the plea of assumed risk of the deceased, where the ground of the plea is knowledge, or means of knowledge, of the defect or danger which caused the death, shall not be available—

"where a person of ordinary care would have continued in the service with the knowledge of the defect and danger."

Appellants insist it was error to instruct the jury as stated because, they say, the statute "is applicable only to defects which must be encountered by the servant if he remains in the service." The argument in appellants' brief in support of the contention is as follows:

"When the statute provides that the defense cannot be maintained if a man of ordinary care would have remained in the service with the knowledge of the defect and danger, it does not literally mean that if a man of ordinary care remained in the service it would have deprived the defendant of that defense, but it means that if a man of ordinary care would remain in that department of the service which would require him to encounter the danger arising from the known defect. Take the case in hand: Keller was at work in the east yard at Fort Worth. Assume that Keller knew of the defects in the yards and the danger arising therefrom. It may be that a man of ordinary care, knowing of the defects and dangers arising therefrom in the west yard would not remain in the service

as a switchman in the west yard, but he could have remained in the service as a switchman in the east yard, although he knew of the defect and danger arising therefrom in the west yard. Stating it in another form: Keller knew of the defects and the danger arising therefrom in the west yard at Fort Worth. A man of ordinary care would not have remained in the service as a switchman in the west yard, which caused him to encounter the danger arising from the defects, yet he would not have to quit the service on that account, but it would be his duty to quit that service which caused him to encounter the danger arising from' the defect. That is, he must quit service in the west yard."

It will be observed that the argument is on the theory that the deceased's duty as appellants' employé was confined to service in the east yard exclusively. The theory is not only without testimony to support it, but is in the face of undisputed testimony showing that the deceased's duty as such employé included service in both yards, and there was no testimony showing that he would not have had to quit appellants' service had he refused to work in the west yard. The testimony was that, while he belonged to a switching crew in the east yard, his duty as appellant's employé required him to work in both yards.

[4] The further contention of appellants that if the statute was applicable to the facts of the case the instruction in question was nevertheless erroneous, in that the jury were told that the defense of assumed risk was not available to appellants if "a person of ordinary care would have continued in the service of the defendants with knowledge of such condition of the yards," whereas, by the terms of the statute, the defense was available if such a person would not have continued in the service "with knowledge of the defect and danger" therefrom, will not be determined, as the instruction was not objected to on that ground before it was given to the jury. Article 1971, Vernon's Statutes.

The contentions remaining undisposed of are: (1) That it appeared from the testimony as a matter of law that the deceased assumed the risk he incurred in being where he was on track 7; and (2) that the verdict and judgment are excessive. As we view the record, there is no merit in either of the contentions, and they are overruled.

The judgment is affirmed.