**THOMASON et al. v. FUNDERBURK et ux.**
**(No. 10153.)**

(Court of Civil Appeals of Texas. Fort Worth.
June 23, 1923. Rehearing Denied
Oct. 13, 1923.)

I. Mines and minerals ⬅⬎66—Failure to develop lands after doing some digging thereon held abandonment of lease.

Lessee of mineral lands for 20 years *held* to have abandoned rights under lease by failure to make further effort toward development, after beginning in 1910 to dig a hole on one tract covered by leases on the last day before the 15 months in which he had to begin operations, and then making no further effort until time of suit to cancel in 1919.

2. Appeal and error ⬅⬎1001(1)—Abandonment of mineral lease a question for jury.

The question of abandonment of a mineral lease is ordinarily for jury, and its finding on sufficient evidence will not be disturbed on appeal.

Appeal from District Court, Stephens County; W. R. Ely, Judge.

Suit to cancel mineral lease by J. R. Funderburk and wife against G. J. Thomason and another. Judgment for plaintiffs, and defendants appeal. Affirmed.

Hawkins, Hawkins & David, of Breckenridge, for appellants.

J. R. Stubblefield, of Eastland, for appellee.

BUCK, J. In this suit J. R. Funderburk and wife sued G. J. Thomason for a rescission of a contract of a lease and a cancellation of the lease, for various grounds of alleged fraud, and on account of the alleged abandonment by defendant of the efforts to develop the land for oil or gas or coal, etc. Plaintiffs alleged that on the 16th day of October, 1909, the defendant came into the community where the plaintiffs resided, and falsely and fraudulently represented to S. J. McEntire and W. R. Power that he desired to secure certain mineral rights on 3,000 or 4,000 acres of land situated in Stephens county, and in the vicinity where the plaintiffs resided, and further represented to said parties that if he could secure a mineral lease on the same he would within 15 months thereafter begin actual operations for the development of said minerals. That defendant falsely and fraudulently represented to said two parties that he was a stockholder and one of the principal directors of the Diamond Coal, Oil & Gas Company, and that said company was a corporation having large financial assets; or that he falsely and fraudulently represented that such a corporation would be formed, and that when formed the same would have

large financial responsibilities and great financial assets, sufficient to develop the mineral resources, and especially the coal which he believed to exist in said community. That he further represented to said parties that if the people living in that community would execute to him mineral leases on their respective tracts of land, that he would thereafter transfer to said corporation, the Diamond Coal, Oil & Gas Company, then organized or to be organized, each and all of said mineral leases which were to be executed by the people of the vicinity to the defendant.

Other allegations of fraud were contained in the petition of plaintiffs. It was further alleged that said McEntire and Power, believing and having confidence in the representations made by defendant, made the same representations to the plaintiffs, as well as to the other citizens of that community, and that said representations were relied on, and the leases executed. It was further alleged that the leases were executed and delivered to defendant, but that he did not transfer them to said corporation, and that in fact said corporation was organized under the laws of Arizona with a purported capital stock of $700,000, and that it had no assets and that the stock therein was worthless. That the defendant issued to plaintiffs certain stock in the Diamond Coal, Oil & Gas Company, but that said stock was worthless. It was alleged that the defendant had never begun operations for the drilling of a well for oil and gas, nor had he begun operations for mining coal or other mineral, and had never prosecuted with any diligence any drilling or mining on the described lands.

Four cases in which the plaintiffs recovered judgment against defendant for a cancellation of the leases in the neighborhood of the plaintiffs were affirmed by the El Paso Court of Civil Appeals, and a writ of error was denied in each case. See Thomason v. Hawley, 242 S. W. 521; Thomason v. Powers, 242 S. W. 525; Thomason v. McEntire, 242 S. W. 525; Thomason v. Wisdom, 242 S. W. 525. The case of Thomason v. S. J. McEntire was tried in the district court of Stephens county, and plaintiffs recovered, and on appeal to this court was affirmed. See Thomason v. McEntire, 233 S. W. 616. This cause is now pending in the Supreme Court, and we have waited for some weeks, hoping that the Supreme Court would render a decision in that case before we were called upon to decide this appeal, inasmuch as there are many questions common to both cases. But owing to the nearness of the end of this term and because we believe that this appeal can be determined upon one question, to wit, abandonment, we have concluded to no longer wait on the Supreme Court's decision in Thomason v. McEntire, supra.

⬅⬎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] The evidence tends to show that Thomason began the digging of a hole on one of the tracts of land covered by these leases, to wit, the tract belonging to M. F. Ham, on the last day before the expiration of the 15 months in which he had to begin operations. The hole was dug about 33 or 34 feet and a coal vein from 5 to 8 inches thick was discovered. This was in the fall of 1910. No other efforts toward development had been made up until the filing of the suit on June 25, 1919. The contract between the plaintiffs and defendant contained these provisions:

"To have and to hold the above-described premises unto the said parties of the second part, their heirs, and assigns upon the following conditions: In case operations for either the drilling of a well for coal, oil, gas, mining, or other minerals is not commenced and prosecuted with due diligence within 15 months from this date on the above-described premises or one or more of their leases owned by the parties of the second part, then the second party agrees to pay to the first party the sum of 10 per cent. per annum on the par value of each dollar of stock owned by the first party, it being agreed that the first party is to take shares of the Diamond Coal, Oil & Gas Company at par value as payment of the above-named 10 per cent. until such well or shaft is commenced, and it is agreed that the completion of such well or opening upon one mine, gas, or oil well shall be and operate as a full liquidation of all rental under this provision during the remainder of the term of this lease; such payment will be made direct to the holder of said stock.

"In case the parties of the second part should bore and discover either coal, oil, gas, or other minerals, then and in that event this grant, incumbrance, or conveyance shall be in full force and effect for 20 years from the time of such discovery of said product, and as much longer as coal, oil, gas, water, or other minerals can be produced in paying quantities therefrom. Whenever sales are being made of the product on the land above described, such sales shall be added to the sales of the products from all leases owned by the parties of the second part, and a settlement thereof shall be made at the end of each quarter.

"It is further agreed that the second parties, their heirs, and assigns, may at any time hereafter surrender up this grant, and may be relieved from any part of the contract heretofore entered into that may at that time remain unfulfilled, and then and from thereafter this grant shall be null and void, and no longer binding on either party."

Plaintiff testified that he received $1,600 of stock in the Diamond Oil, Coal & Gas Company as his pro rata part, but that he sold said stock for $300 to Jeff McEntire, and that it was worthless. Every gas or oil lease, and perhaps every mineral lease, contains an implied covenant that the lessee will use reasonable diligence, not only in beginning operations, but in operating the premises after they have been developed. See Thornton's Law of Oil & Gas, vol. 1, §§ 103, 104, pp. 163–165. A failure, therefore, to work the premises diligently will subject the lessees to an action for damages.

In Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, it is said, quoting from syllabus:

"The completion of the one well required by the lease did not confer on the lessee an absolute right to develop oil under his lease at any time in his election within the term of 20 years.

"In such lease for royalty there is an implied obligation that the lessee will fully develop the possibilities of the land for oil production."

In this case the Supreme Court further held that the contract having fixed conditions on which the lease should be forfeited, the default of the lessee in the performance of his implied obligation to further develop was not to be treated as a condition subsequent for forfeiture of his lease but merely as a breach of his contract, giving the lessor an action for damages. That the right to cancel could be sustained only on the theory of abandonment, and held the evidence supported such theory. In the cited case, lessee began to drill on the land within 30 days from the date of the contract, and prosecuted the work with due diligence until oil was found at a depth of about 250 feet, on which a royalty was paid to lessor for about 60 days, when the well ceased to produce. Two other wells were sunk by lessee within 12 months without finding oil, whereupon he removed his machinery and equipment from the land, and did nothing further towards development for some 9 years.

So in the instant case, nearly 9 years elapsed from the digging of the one hole on Ham's land, and the finding of a small vein of coal, before suit was filed, and no other effort has been made by the lessee to further develop the land for any minerals.

[2] The jury found in answer to special issues: (1) That the defendant and interveners, the brothers of G. J. Thomason, did not commence drilling a well for coal, oil or gas or other minerals within 15 months from the date of the lease to wit, October 16, 1909, and prosecute the same with due diligence on plaintiff's land or any other land on which defendant had a mineral contract; and (2) that the defendant and interveners had abandoned the rights, if any they had, to the land of plaintiff. We think the evidence is sufficient to sustain the answers to the question as to abandonment, and as to the failure to prosecute the drilling with due diligence. The question of abandonment is ordinarily one for the jury, and, where the jury has found abandonment on sufficient evidence, our appellate courts will not disturb such finding.

Judgment affirmed.