## FORREST v. BURNS.

### No. 1334.

Court of Civil Appeals of Texas. Waco.
Feb. 2, 1933.

Rehearing Denied March 16, 1933.

Rice P. Lynn and Marcus W. Davis, both of San Antonio, for appellant.

Bliss & Daffan and John Wall, all of San Antonio, for appellee.

STANFORD, Justice.

This suit was filed by appellee. The record shows that appellant was at the time, and had been for many years, in the business of making small loans to people in necessitous circumstances at a very high rate of interest ranging from 2½ per cent. to 10 per cent. per month. Appellee further alleged that at various times during 1924, and for several years thereafter, appellant made several small loans during said years, and all of said loans were made at an exorbitant rate of interest; that on June 10, 1925, appellee having obtained $600, she paid appellant the sum of $260 on June 13, 1925. Appellant insisted that the $60 over and above the face of the loan represented additional interest; that appellant continued to make loans on such unreasonable rate of interest. About 1926 appellant loaned appellee $250, payable to his order ninety days after date; that appellant required appellee to execute and deliver unto him a demand note for the principal sum of $320, claiming that said amount represented principal and interest due him until said date. However, he retained said note and all other notes which had been executed by appellee to appellant. Appellee further alleged that appellant presented appellee with a statement of her account setting forth that she was still indebted to him in the sum of $320, being the amount of the note that she had theretofore executed to him. Appellee further alleges that on the 12th day of December, 1927, a corporation organized under the laws of the republic of Mexico, called the "Cosmos Compania Mexicana de Petroleo, S. A.", accepted for payment unto appellee for a valuable consideration a certain bill of exchange for the sum of $1,000 American gold, drawn by her upon said corporation, payable on September 20, 1927, at the Texas State Bank & Trust Company in the city of San Antonio, Tex.; that she, being badly in need of money to support herself and family, took said bill of exchange to appellant on September 30, 1927, and proposed to appellant that, if he would cash said bill of exchange, he might take out of the proceeds the sum of $250 in payment of what she owed him, and that appellant stated to appellee that he would have to have an investigation made as to the liability of said corporation to pay off same when due, and as

to its standing generally, and desired appellee to leave said bill of exchange with him for the purpose of making an investigation; that appellee consented to leave said bill of exchange with appellant for said purpose, and that appellee was informed that appellant did cause an investigation to be made, and, instead of proceeding to cash said bill of exchange in accordance with appellee's proposition, appellant proceeded to attempt to collect the amount of said bill of exchange, and has converted said bill of exchange to his own use and benefit, without the consent of appellee. She further alleged that the said bill of exchange at the time the same was converted by appellant to his own use and benefit was then and there worth the sum of $1,000. She further alleged that she had repeatedly demanded of appellant that he either return said bill of exchange or pay her therefor, but that appellant wholly failed and refused to do either, to the damage of appellee in the sum of $1,000. Thereupon appellee sued appellant and prayed for judgment against him in the sum of $1,000, with interest and damages, including the cancellation of said notes of appellee which appellant had retained.

In appellant's answer, by way of affirmative relief, he admitted that the bill of exchange described by plaintiff had been left with him, but alleged further that on the 29th day of June, 1925, plaintiff was indebted to him for money loaned, of which said debt there was a balance still due, and other loans which appellee owed him amounting to a large sum. Appellant pleaded further that during the month of June appellee executed and delivered to him a power of attorney, appointing him as her attorney in fact, and therein empowered and authorized defendant to collect any income due plaintiff from any source whatsoever, and likewise by said power of attorney authorized any firm, corporation, or individual in the state of Texas or any other state, who might be indebted to plaintiff in any manner, to pay same to defendant, as her attorney in fact, any money that might be due plaintiff until her debt to defendant should be fully paid. Said power of attorney further provided that same should be irrevocable until plaintiff's debt to defendant was paid in full. Said power of attorney further provided that the power therein granted to defendant should extend to all those necessary powers to carry out its intent, including the power to sign plaintiff's name to any check or instrument necessary to convert into money any sum or thing that may be, or become due plaintiff as income, fee, or commission. Defendant alleged further that plaintiff's debt to defendant is due and unpaid, and at the time the defendant took possession of said bill of exchange, and during all of the time that defendant had possession of said bill of exchange, said debt was due and unpaid. He further alleged that said power of attorney is now, and ever since the 29th day of June, 1925, has been, in full force and effect and irrevocable, and that in taking and retaining possession of said bill of exchange, did so with power and authority granted to him by said power of attorney, and for the purpose and with the intent of making an investigation of the ability of the drawers of said bill of exchange to pay same, if possible, and, out of the proceeds of same, pay and cancel plaintiff's debt to defendant as alleged in plaintiff's petition. To this pleading is attached a copy of the power of attorney above referred to, which purports to give appellant power to do anything and everything that he desired to do in order to collect and take into his possession any and all property of appellee wherever same might be located, and to retain and use same as long as he (the defendant) might think proper.

The pleading as above set out remained in the same condition as above stated for a period of about one year, when appellant filed his second amended original answer, in which his defense is that he took the draft in question under his power of attorney given him by appellee and sent it down to Tampico, Mexico, for collection. In this latter pleading appellant contended that he sent said power of attorney "with the consent and knowledge of appellee," but claimed that appellee was still indebted to him, and that therefore he had the authority under said power of attorney to collect said draft and to apply its proceeds to the payment of his debt, whether she consented to this course or not. In the second amended original answer appellant did not claim that appellee owed him one cent, but that he had taken said draft and had sent it down to Tampico, Mexico, for collection under the express instructions of appellee.

The case was submitted to the jury on special issues; the first special issue being as follows: "Did the defendant Forrest covert the draft referred to in the petition and introduced in evidence?" To which the jury replied, "Yes."

In connection with this special issue, the court instructed the jury as follows:

"In connection with question 1, you are instructed that the conversion of personal property means either the appropriation of it for the use and benefit of the person appropriating it and without the consent of the owner, or else the unlawful detention of the property from the owner without his or her consent."

Special Issue No. 2: "If you answer 'Yes' to question No. 1, but only if you so answer the same, then what was the fair market value of said draft at the time of such conversion?" To which the jury answered: "$1,000.00."

On the above answers, the court rendered judgment in favor of appellee for the sum of $1,257.50.

## Opinion.

Appellant requested only one special issue, which was given by the trial court. This being true, and appellant having made no objection or exception to the court's charge, all errors, if any, in said charge will be considered as waived. See article 2185, Revised Civil Statutes; Jones v. Wichita Valley R. Co. (Tex. Civ. App.) 195 S. W. 890; Heidenheimer, Strassburger & Co. v. H. & T. C. R. Co. (Tex. Civ. App.) 197 S. W. 886; Taylor v. Lafevers (Tex. Civ. App.) 198 S. W. 651; Gonzales v. Flores (Tex. Civ. App.) 200 S. W. 851; Queen v. Turman (Tex. Civ. App.) 241 S. W. 786.

Appellant's brief recites the following:

"Statement of Propositions on Which Appeal is Predicated.

"1. The original cause of action was for the conversion by defendant of a certain draft or bill of exchange and was based wholly on said draft or bill of exchange. The pleadings of plaintiff as set forth in her amended original petition contains matters introducing and seeking to set forth a new and independent cause of action or a misjoinder of causes of action, which cause or causes of action, if any she had, were barred by the two and four year statutes of limitation of the State of Texas, and in introducing or allowing the introduction of testimony by the plaintiff in person as a witness concerning loans, their repayment and/or overpayment as the same were not in issue, and such testimony and pleading was prejudicial to defendant's defense or plaintiff's cause of action for conversion; and which showed ratification by acquiescence with knowledge of the fraud, if any, alleged to have been practiced upon plaintiff." (Assignments of error 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11.)

In briefing under our law, propositions, if any, are usually based upon assignments of error, and such assignments followed by propositions that point out distinctly the proposition intended to be discussed. In this case the supposed proposition raises in fact about five or six different and distinct propositions, and it is not permissible in making such brief for a number of propositions to be stated together. Such procedure is confusing and should not be, under our procedure, tolerated. To treat said propositions as assignments of error would not help the situation. Said proposition is followed by eleven assignments of error, but this, instead of aiding the propositions, only served to increase the confusion. We do not think that appellant's supposed propositions are entitled to be considered. However, we will say that, if the above propositions should be considered, this case should not be reversed. The rules of our procedure are very liberal, and, in appellee's original petition, same was based exclusively upon the draft as contended by appellant. The record shows that said original petition was duly amended by the filing of appellee's first amended original petition, and the cause of action therein stated included, not only an action for damages for conversion of the draft, but was for the cancellation of numerous notes which had been given to appellant by appellee, and many of them paid by appellee, but said notes still retained by appellant. The record shows further that all of these notes were put in evidence on the trial, and it developed that appellee was not indebted to appellant, but that appellant was indebted to appellee in a small amount. This amount being so small, appellee's right to recover from appellant by reason of said notes was abandoned by appellee, and only the right of appellee to recover for conversion of said draft for $1,000 was presented to the jury. This being true, appellant could not have been injured by reason of the matters abandoned.

Appellant's second purported proposition is as follows: "At the conclusion of the evidence for plaintiff, the defendant presented his motion that the court peremptorily instruct the jury to return a verdict finding generally for defendant, and after the close of all evidence the motion was again presented. Said motion was twice refused and an exception allowed." (Assignment of error 12.)

This is neither an assignment of error nor a proposition, and is not entitled to consideration, but in deference to appellant's insistence will say: Both appellant and appellee have filed supplemental briefs. Appellant's principal contention is that the court erred in refusing to instruct a verdict for the appellant. The draft which appellant is alleged to have converted was dated September 2, 1927 and was due November 20, 1927. It was accepted by the drawee soon after it was drawn. After it had been accepted, appellee took the draft to appellant to get him to cash it and pay her the money. He (appellant) suggested that she take the draft to Bradstreet for the purpose of having that company make an investigation. This she did, and Bradstreet gave her a receipt for the draft, and she left same with Bradstreet Company for said investigation. She did not give Bradstreet any authority to deliver said draft to Forrest or any one else. After waiting what she thought was a reasonable time, she went to Bradstreet to get said draft, and was informed that they had delivered said draft to Mr. Forrest. She then went to appellant, Forrest, to get the draft or the proceeds of same, but appellant would not let her have the draft, and stated that he had sent it to be collected through a bank, not stating what bank. Appellant having positively refused to consent for the draft to be returned to her, she then wired the drawee not to pay the money on the draft to appellant. The draft was then returned to Mr. Forrest. Appellee testified that

she went to appellant, Forrest, after the draft had been returned to him, and he refused to give her the draft. Bradstreet's investigation of the responsibility of the drawee was completed October 7, 1927. Appellee had a receipt given by Bradstreet to appellee for the return of the draft, not to Forrest, but to appellee, so it is apparent by reason of the negligent or wrongful conduct of the Bradstreet Company and Forrest said draft came into the hands of appellant, Forrest. Appellee never delivered the draft to Forrest, and never at any time authorized Forrest to send it in for collection. The only thing Caldwell, of the Bradstreet Company, told her, was that Mr. Forrest had taken possession of the draft, and she (appellee) testified very positively that she never gave Forrest any authority to collect the draft or make any other disposition of it. Appellant, Forrest, does not claim that the draft was ever placed in his hands for collection, until a few days before it was due he claims that appellee came up and told him to send it in for collection. This claim on his part is completely refuted by the fact that, as soon as appellee learned that Bradstreet had delivered the draft to appellant, she went and demanded of appellant to return it to her, and later, or at the same time, when appellant told her he had sent the draft in for collection, she wired the drawee not to pay any money on the draft to appellant. We think the record shows very clearly that appellant came wrongfully into possession of the draft, and exercised wrongful dominion over it, thereby depriving appellee of her right to its possession, and that, by reason of the wrongful acts of appellant and the Bradstreet Company in wrongfully withholding from appellee the possession of said draft, appellant thereby converted same to his own use and benefit. Appellee was never able to get possession of said draft by reason of its conversion by appellant as above stated.

We think there is evidence in the record sufficient to show that appellant did convert said draft to his own use and benefit, and the court was correct in submitting such issue to the jury, and the jury was correct in finding on such issue for appellee. We think also that the court's charge defining "conversion" and submitting said issue to the jury was correct, and said issue having been submitted without any objection or criticism on the part of appellant, all errors, if any, in said charge were thereby waived. Queen v. Turman (Tex. Civ. App.) 241 S. W. 786; Payne v. Harris (Tex. Com. App.) 241 S. W. 1008; Thomason v. Hawley (Tex. Civ. App.) 242 S. W. 521; Thomason v. Powers (Tex. Civ. App.) 242 S. W. 525; Lancaster v. Keller (Tex. Civ. App.) 244 S. W. 1094; Southern Casualty Co. v. Welch Motor Co. (Tex. Civ. App.) 291 S. W. 272; Heid Bros. v. Bray (Tex. Civ. App.) 7 S.W.(2d) 165; Port City Lumber Co. v. Markell (Tex. Civ. App.) 9 S.W.(2d) 449; Robertson v. Vernon (Tex. Com. App.) 12 S.W.(2d) 991.

Appellant also complains that there was no evidence offered to show the solvency of the drawee or acceptor of the draft, and without such evidence the verdict of the jury and the judgment of the lower court were without sufficient foundation, and that it was necessary for appellee to show solvency of the drawee. This contention is not tenable. Ramsey v. Hurley, 72 Tex. 194, 12 S. W. pages 56–59. Our Supreme Court in said case stated: "The ordinary measure of damages in such cases is the amount prima facie due on the face of the claim. If the claim for the conversion of which the suit is brought is really of less value than its face it devolves upon the defendant to prove that fact."

See, also, Kirkpatrick v. San Angelo National Bank (Tex. Civ. App.) 148 S. W. 362; Morris v. Smith, 51 Tex. Civ. App. 357, 112 S. W. 130; France v. Gibson .(Tex. Civ. App.) 101 S. W. 536; Knipper v. Blumenthal, 107 Mo. 665, 18 S. W. 23.

All of appellant's contentions are overruled, and the judgment of the trial court is hereby affirmed.